UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JACQUELINE MANZOLILLO-BLAIS,

      Plaintiff,

vs.

ABC, INC., and SUMMERDALE PRODUCTIONS, INC.,

      Defendants.
-----------------------------------------------------------------X

14 CV 2925

**COMPLAINT**

**JURY TRIAL DEMANDED**

JUDGE BRICCETTI

## I. INTRODUCTION

1. Plaintiff brings this action against defendants to redress the violation of her rights to be free from pregnancy and gender discrimination in violation of the Pregnancy Discrimination Act (PDA), See 42 U.S.C. § 2000e(k), which is part Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. §§ 2000e et seq., and also in violation of the New York City Human Rights Law (NYCHRL), New York City Administrative Code § 8-107, as well as New York State Labor Law § 206-c.

## II. PARTIES

2. At all relevant times, plaintiff Jacqueline Manzolillo-Blais was an employee of both defendants -- ABC, Inc., and Summerdale Productions, Inc.

3. Defendant ABC, Inc. is a Delaware corporation with its principal place of business at 77 West 66th Street, New York, NY 10023-6298. It may sue and be sued.

4. Defendant Summerdale Productions, Inc. is a California corporation with its headquarters at 500 S. Buena Vista Street, Burbank, CA 91521, and it conducts business in New York. It may sue and be sued.

### III. JURISDICTION

4. As plaintiff brings this action to enforce Title VII of the Civil Rights Act of 1964, this Court has jurisdiction over the case pursuant to 28 U.S.C. §§ 1331, 1343 (3) and (4) and 42 U.S.C. § 2000e et seq.

5. As plaintiff's New York City law claims arise from the same nucleus of operative facts as her federal claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6. Plaintiff timely filed an EEOC charge of gender/pregnancy discrimination, and received a right to sue notice from the EEOC on April 17, 2014, within ninety days of the filing of this Complaint.

### IV. FACTUAL AVERMENTS

7. Plaintiff commenced working for defendants in May 2012 as audience supervisor on the Katie Couric show, "Katie."

8. As audience supervisor, plaintiff supervised a team of seven employees which recruited live audiences for the "Katie" show and managed the audiences once they arrived in the studio.

9. Plaintiff had previously been very successful for several years as audience supervisor for the Martha Stewart TV show.

10. At all relevant times, plaintiff well performed her job as audience supervisor of the "Katie" show.

11. In April 2013, plaintiff advised her direct supervisor, Jim Tomlinson, the "Katie" show's executive in charge of production, that she was pregnant with her second child.

12. Plaintiff told Tomlinson that she intended to work into October 2013 and then take

eight weeks of leave, as permitted by law and company policy.

13. Shortly after plaintiff informed Tomlinson of her pregnancy and her anticipated need for leave in October 2013, her relationship with Tomlinson changed for the worse.

14. Tomlinson and plaintiff had previously had a friendly, collegial working relationship.

15. However, within a few weeks after plaintiff disclosed her pregnancy, Tomlinson became distant and evasive toward plaintiff.

16. In May 2013, within a few weeks of telling Tomlinson of her pregnancy, Tomlinson interviewed a non-pregnant acquaintance of plaintiff's regarding plaintiff's position as audience supervisor, and plaintiff learned of this through her acquaintance.

17. In May 2013, once she learned of this, and also due to her concerns about Tomlinson's change in attitude toward her, plaintiff asked him directly whether she would be returning in the Fall for the second season of "Katie."

18. Tomlinson responded by telling plaintiff that he needed to speak to the ABC executive in charge about plaintiff's status, and would follow up with her within two weeks.

19. However, Tomlinson did not follow up with plaintiff about her status within the two week time period.

20. Instead, on June 28, 2013, after plaintiff's pregnancy had become visible, plaintiff was advised that her employment was being terminated. Defendants asked plaintiff to continue in her position until July 19, 2013, which was the end of season one for the "Katie" show.

21. Plaintiff's termination letter falsely stated that plaintiff's termination was by "mutual consent."

22. Tomlinson advised plaintiff that she needed to co-sign this letter to receive two

weeks of severance benefits following her termination and, without any choice, plaintiff did so.

23. When she was terminated, defendants advised plaintiff that they were going to contract audience services through a company called 1iota.

24. However, 1iota had no successful experience performing audience services on daytime TV shows produced in New York.

25. Indeed, defendants encouraged plaintiff's non-pregnant subordinates to apply for employment with One Iota, and a "page" under plaintiff was actually made the second in charge of audience services on "Katie" by One Iota, reflecting its lack of experience and expertise.

26. Defendants did not encourage plaintiff to apply with One Iota.

27. Prior to plaintiff's April 2013 disclosure of her pregnancy and need for pregnancy-related leave, neither Tomlinson nor anyone else from defendants ever indicated to plaintiff that she might not be returned to her position in Fall 2013 for "Katie's" second season.

28. Daytime TV shows typically hire in the Spring, so that if there will be turnover for the next season, employees are generally advised of this by April at the latest.

29. Plaintiff's pregnancy and need for pregnancy-related leave were motivating factors in defendants' termination of her employment, and in their decision to contract with One Iota to provide audience services for the "Katie" show.

30. When plaintiff first started working for the "Katie" show in May 2012 she was breastfeeding her six-month infant, and she needed to pump (express) breastmilk while at work.

31. After plaintiff advised her supervisors of her need to express breastmilk, she was given a dusty *storage closet* piled high with boxes in which to do so.

32. As this was completely unsuitable, plaintiff ultimately pumped breastmilk in an

office shared with her co-workers, covering herself as best she could.

33. New York State Labor Law § 206-c requires employers to provide nursing mothers with suitable private areas in which to express breastmilk.

34. Among other things, such spaces must be clean and must contain, at a minimum, a chair and a small table, desk, counter, or other flat surface.

35. The closet which defendants provided to plaintiff was not clean, had no flat surface for plaintiff to place her pump (she had to use the floor) and was otherwise not suitable for a nursing mother to pump breastmilk, *e.g.*, it had boxes precariously stacked around where plaintiff had to sit.

36. In addition, New York Department of Labor guidelines prohibit employers from placing nursing employees in the position that defendants placed plaintiff, namely having to express milk in the presence of her co-workers.

37. A large employer such as ABC could easily have found a more suitable private place for a nursing mother to express breastmilk than a dusty storage closet.

38. ABC's treatment of plaintiff is at direct odds with its public relations efforts to position itself as a "family friendly" company, particularly as a subsidiary of the Disney Corporation.

39. Indeed, upon information and belief, the defendants lied to Katie Couric about the true circumstances surrounding plaintiff's departure from the show.

40. Ms. Couric gave plaintiff a card congratulating her on her upcoming pregnancy and suggesting that she understood her decision to leave the show to care for her newborn.

41. This card reflects that the show's producers did not want to tell Katie Couric that, in

fact, plaintiff was involuntarily terminated when she was five months pregnant, because such a termination was both unseemly and unlawful.

42. As a result of being terminated by defendants, plaintiff has lost significant income, including lost earnings of $125,000 per year, and lost benefits.

43. In addition, plaintiff's termination had adverse effects on her health, causing her blood pressure to become elevated.

44. Plaintiff's termination also caused plaintiff significant stress and emotional distress, which manifested in various ways, including sleeplessness, hyperventilation, and crying fits.

45. In addition, plaintiff's termination has had, and will continue to have, adverse effects on plaintiff's career and professional opportunities.

46. In terminating plaintiff because of her pregnancy and need for pregnancy-related leave, defendants acted maliciously and/or with reckless disregard for plaintiff's rights under federal and New York City law.

## V.    CAUSES OF ACTION

47. Plaintiff incorporates paragraphs 1-46 as if fully re-written herein.

48. By terminating plaintiff because of her pregnancy and her need for pregnancy-related leave, in whole or in part, defendants violated the Pregnancy Discrimination Act (PDA), 42 U.S.C. § 2000e(k), which is part Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 2000e et seq.

49. By terminating plaintiff because of her pregnancy and her need for pregnancy-related leave, in whole or in part, defendants violated the New York City Human Rights Law (NYCHRL), New York City Administrative Code § 8-107.

50. By not providing plaintiff with a suitable private space in which to express breastmilk, defendants violated New York Labor Law § 206-c.

## VI. **PRAYER FOR RELIEF**

51. WHEREFORE, plaintiff prays that this Honorable Court:

(a) empanel a jury to hear and decide this matter;

(b) award to plaintiff compensatory damages, including damages for lost pay and benefits, physical sickness and emotional distress;

(c) award to plaintiff punitive damages against defendants under Title VII and the NYCHRL.

(c) award to plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. section 1988, the NYCHRL, and the New York State Labor Law, and

(d) enter any other relief justified by the law and facts.

Dated: April 21, 2014
       Goshen, New York

Respectfully submitted,

Christopher D. Watkins (CW 2240)
SUSSMAN & WATKINS
1 Railroad Ave. – PO Box 1005
Goshen, NY 10924
(845) 294-3991
*Attorneys for Plaintiff*